## Appeal of the Delano Land Co., et al.

' 103        347
f220         36

School directors have no power to appoint a district superintendent for the public schools in a township, and where in such township the school directors engaged the services of a man whom they called "principal of the schools," but whose duties under the contract were substantially those of a district superintendent under the school law: *Held*, that the contract was without warrant of law and void.

April 17th 1883.   Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.   PAXSON, J., absent.

APPEAL from a decree of the Court of Common Pleas of *Schuylkill county :* Of January Term 1883, No. 370.

Bill in equity, filed by the Delano Land Company, Joseph F. Hitch, et al., citizens and taxpayers in the school district of Mahanoy township, against Conners, et al., school directors in said district, Lawrence Ryan and Joseph Wall, the treasurer and collector respectively, for said district, and John Noonan, alleging substantially the following facts :

First. That the plaintiffs in the bill own large tracts of land in the school district of the township of Mahanoy, in the county of Schuylkill.

Second. That the school directors of the said school district, employed one John C. Noonan, to act as superintendent of the schools of the said district, at a salary of $75 per month for twelve months; being contrary to and without authority of law (as is claimed by the plaintiffs), for the reason that the said school district is not a city or borough entitled, by law, to a district superintendent, and that the said district is subject to and under the control of the county superintendent for the county of Schuylkill.

Third. That George W. Weiss, of said county, was duly elected "county superintendent" of the common schools for the said county, for the term of three years, from the 1st day of May 1881, at a salary of $2,025 per annum; that the said Weiss entered upon his duties as such county superintendent and is still acting as such in said county and school district.

Fourth. That the total valuation of the property of the said plaintiffs, situate in the said school district of Mahanoy, amounts to $984,194, while the total valuation of all the real estate in the said school district both seated and unseated, including the plaintiffs, as above stated, amounts to only $1,125,951.

Fifth. That the said school directors have levied a tax of thirteen mills upon each dollar of valuation of the property in said district, for the ordinary school purposes, for the school year of 1882–3, which plaintiffs alleged was ample to defray all necessary expenses for this school year, including the erection of a school building, then contemplated, and keep all the schools open far beyond the time required by the statute (five months).

Sixth. That the said school directors have levied a tax of two mills upon each dollar of the said valuation for building purposes for said year (1882–3), in addition to the thirteen mills above referred to, which said building tax was claimed by the plaintiffs to be unlawful, unjust and without authority of law, for the reason that the thirteen mills, levied as above stated, will be sufficient to defray all lawful current expenses, including the new building contracted to be erected at $640, and besides the building tax would net about $2,000, greatly in excess of what was required for the proposed new building.

Seventh. That the said school directors have placed their warrant in the hands of Joseph Wall, one of the defendants, authorizing and directing him to proceed to collect the said school and building taxes from the plaintiffs in the bill.

The plaintiffs prayed :

(1.) That the said contract with John C. Noonan be rescinded and declared null and void. (2.) That the said Lawrence Ryan, the treasurer of the said school district, and his successors in office, be restrained by writ of injunction, from paying any order that may have been drawn or may hereafter be drawn, for the payment of the services of the said John C. Noonan, as district superintendent. (3.) That the said Joseph Wall, collector, be restrained from collecting the said building tax of two mills for the current year from the plaintiffs.

The defendants filed an answer, in which they admitted the facts as set forth in the first, third, fourth and sixth paragraphs of the bill, as above.

They further admitted that the school directors, and other officers named in the bill, were acting as such officers, except as to John C. Noonan. They denied that he is a district superintendent, although they admit that he is employed at a salary of $70 per month as " principal of schools ;" that the duties of said principal are " to see that teachers are in their places ; to see that the schools are opened as required by law ; to see that the pupils are properly classified, and the schools graded, and to teach in such schools as may be temporarily without teachers, and, by such directions, suggestions and illustrations, to the other teachers, to establish and maintain a uniform mode of teaching in the said schools." That the said school district covers a large territory ; that there are fifteen schools contained therein ; about thirty teachers employed, and about fourteen hundred pupils taught ; that these schools are widely scattered and require a " principal of schools " for the purposes aforesaid. They further admitted that the directors have levied a tax of thirteen mills upon each dollar of valuation, for the school year of 1882–3, but denied that it is amply sufficient to defray the necessary expenses, including the erection of buildings contemplated by the school board for that year, and keep all the schools

open as alleged by the plaintiffs; they averred that said tax will produce in the gross, say $14,770, and, after deducting exonerations, collector's and treasurer's fees, in the net about $12,600; that it will require, for the school year aforesaid, $12,486 for tuition; for auditors' fees, $67.75; for rents and repairs, $312; for fuel, $450; school supplies, $200; for secretary and attorney, $250; making a total of $13,688. The state appropriation being about $600, and the redemption and taxes paid to the county treasurer (for use of the school district) being about $1,000 (making together a total net income of $14,200).

They further admitted that they have levied a tax of two mills for building purposes for said year, but they denied that the same is unlawful or excessive, but that the requirements of the board for building purposes are such as in the exercise of the judgment of said board makes such tax of two mills necessary; that the net income of this building tax, after paying for collection, will produce $1,917, out of which the board propose to pay for the building to be erected for that year, $630, and for furniture for the same, $120, and to re-imburse the general fund, $660, for a building, and $120 for furniture for the same, that was paid for last year (1881–2), out of the "general fund," there being then no building fund out of which the same could then be paid. It being the understanding among the directors that the said sums of $660 and $120 should be repaid to the general fund out of a building fund to be raised by a levy during the year 1882–3.

They therefore asked to be dismissed with costs.

The court appointed an Examiner, whose notes of testimony were submitted by mutual agreement to the court, for its decision without the intervention of a Master.  D. B. GREEN, J., filed the following judgment and decree:

The school district of Mahanoy township has fifteen schools, and employs twenty-five teachers, most of the schools having a principal and an assistant teacher.  About fourteen hundred pupils are taught in these schools.  In former years, for the purpose of securing greater efficiency in the schools of the district, the board of directors elected a "superintendent" of the schools.  It seems to have been his duty to exercise a general supervision, to advise and instruct the teachers, to see that the pupils are properly classified and the schools graded, to fill the place of any teacher temporarily absent, to attend to supplies that might be required, to report to the board, from time to time, as to the condition of the schools and the efficiency of the teachers, and generally to do whatever was required to secure efficient and uniform modes of teaching.  During the past year the board of directors elected John C. Noonan to

[Delano Land Co.'s Appeal.]

this position, at a salary of $70 a month. They, however, changed his title from superintendent to that of "principal of schools." But in changing the name they did not change the thing. His duties remained substantially the same. A contract was entered into with Noonan to serve as principal for the school year.

The plaintiffs claim that the appointment to such a position "is contrary to and without authority of law, for the reason that the said school district is not a city or borough, entitled, by law, to a district superintendent, but said school district is subject to and under the control of the county superintendent for the county of Schuylkill."

Whilst the defendants admit the superior authority and control of the county superintendent, they claim that the position was created for the purpose of giving greater efficiency to the schools, and securing uniformity in the methods of instruction, and having the schools properly graded, &c., and that these objects can be attained in entire subordination to his (county superintendent) authority under the law.

An examination of the powers and duties of the county superintendent will, I think, make it clear that there is no conflict of authority between the two positions. On the contrary, both may be exercised in entire harmony and with evident advantage to the cause of education. The work of a county superintendent, scattered over a territory as large as the county of Schuylkill with its population of 130,000, is necessarily small in amount within a single district. A visit or two in a year is perhaps all that he may be able to give to the schools of a district. His opportunities of giving "directions in the art of teaching and the method thereof in each school, as to him, together with the directors or controllers, shall be deemed expedient and necessary," of advising with the boards of directors, &c., are at best but meagre. His supervision must be of the most general character.

On the contrary, a local superintendent or principal, as he may be called, (for in a matter of this kind we deal with things and not mere names,) appointed for a single district, and acting in entire subordination to the county superintendent, may render invaluable aid in making the system efficient and progressive. In the filling of such a position, every thing will depend upon the motives actuating the boards of directors. If the position is made simply to provide a place for some favorite, at the public expense, then no good can be expected. But if, on the contrary, the position is created for the good of the schools, and ability, fitness, and character, are the tests which govern the selection of the official, then no one will deny that a great benefit may be derived. Such a position as this is quite different from that of a borough superintendent, elected

[Delano Land Co.'s Appeal.]

under the act of 9th of April, 1867, and who acts independently of the county superintendent. " The law does not give to any district the right, in distinct terms, of appointing superintendents, except in cities and boroughs of over five thousand inhabitants." But under the large discretion which is entrusted to the directors of school districts, the right to appoint such officials, acting under the direction of the county superintendents and the boards of directors, seems to have been uniformly recognized by the school department of the Commonwealth. (See section 334 of the book containing the school laws and decisions of the state superintendent.)

But such appointments may be made only for the benefit of the schools; not for the purpose of relieving the directors from duties which are imposed on them of exercising a general supervision, and of visiting every school, by one or more of their number, at least once in each month, and of entering on the minutes the result of such visit.

Under the facts in evidence, I do not find that the board of directors have exceeded their authority in appointing a principal of their schools, with the powers and duties indicated, and, therefore, this prayer of the bill for an injunction is not sustained.

We are further asked to restrain the collection of a two mill building tax, authorized by the board for the current year. The board have, in addition, laid a tax of thirteen mills for general school purposes, which is the maximum allowed by law. The two-mill building tax will produce, after the exonerations and commissions are deducted, about $1,917. This sum is to be used in the payment of the building now erecting, to wit: $630; and furniture for the same, $120. And it is further proposed " to repay to the general fund $660 for new building, and $120 for furniture, paid last year out of the general fund, there being no building fund out of which the same could be paid."

Can the board levy a building tax for the purpose of paying a debt already paid, or for the purpose of repaying the general fund out of which the debt was paid? I think this could not be done unless the old debt was paid by creating a new one. The debt having been once paid out of the school funds without creating new obligations, the board cannot, for the purpose of swelling the assets of a succeeding year, levy a building tax under the ostensible claim of repaying the general fund what had been paid out of it for buildings, &c.

The directors claim that it was the understanding amongst themselves " that the said sums of $660 and $120 should be repaid to the general fund out of a building fund to be raised by a levy during the year 1882-3." Nothing of this alleged understanding was even entered upon the minutes and seems

[Delano Land Co.'s Appeal.]

to have been confined to mere talk among the directors. I find the fact to be that when the tax of 1881 was levied, the subject of a building tax was talked of, some claiming that a tax of thirteen mills for school purposes would be sufficient to pay for the new building, including the current expenses of the district, others doubted this, and then there was a tacit understanding that if it was not sufficient, a building tax should be levied the succeeding year. A reference to the account of 1881–2 as audited shows that the thirteen mill tax and other sources of income were ample for the payment of the general expenses and the building and furniture

| | | |
|---|---|---:|
| The receipts of the treasurer were, | .   .   . | $17,007.23 |
| After paying the general school expenses : | | |
| School furniture, | .   .   .   . | $1,231.63 |
| Rents and repairs, | .   .   .   . | 312.40 |
| Lumber and materials, | .   .   . | 273.60 |
| New building, | .   .   .   .   . | 660.00 |
| Deane judgment, | .   ..   .   . | 205.17 |
| And other items—In the aggregate | .   . | 16,869.93 |
| This left a balance in the treasury of, | . | $137.29 |

I find no evidence in the case to show that the receipts for 1881–2 were not ample to pay the general expenses as well as the building and furniture paid for in that year, and I have, therefore, come to the conclusion that the defendants should be restrained from levying and collecting so much of the building tax as is intended to repay the general fund the $780 paid by it for building and furniture in 1881–2. This will leave the sum of $750 to be collected by a building tax, and a tax at the rate of four-fifths of one mill will be sufficient for the purpose, allowing for exonerations and commissions.

We shall, therefore, reduce the building tax to that rate, and direct injunction to issue restraining the collection of any greater tax, and that a decree be prepared accordingly, and that the defendants pay the costs.

The complainants thereupon took this appeal, assigning for error the refusal of the court to declare the contract with John C. Noonan null and void.

*William B. Wells*, for the appellants, cited Perot *v.* City, 2 W. N. C. 251.

*James B. Reilly* and *Charles W. Wells* (*James S. Grady* with them), for the appellees.

Mr. Justice Trunkey delivered the opinion of the court, May 7th 1883.

The school district of Mahanoy township contains over twenty-five square miles of territory, fifteen schools widely scattered, fourteen hundred pupils and twenty-five teachers. Three teachers are employed in one of the schools, two in each of nine of the schools, and one in each of the remaining four. Where more than one teacher is employed one is called principal and the others assistants; much higher salary is paid to each of the principals than to the assistants.

John C. Noonan was elected principal of the district by acclamation on June 16th 1882. It appears in the minutes of the board of directors and in the testimony of the secretary, that Noonan was instructed to furnish all the material for the repairing, and accept the bills and present the same to the board, to have a partition put in Bowman's school, to procure and furnish all cards and certificates for examination of pupils, examination to take place every three months, and report progress by cards, to see that sufficient fuel is furnished, to report the loss of time of each teacher for each month, and to perform duties besides those set forth in the written contract. The answer avers that his duties are " to see that the teachers are in their places; to see that the schools are opened as required by law; to see that the pupils are properly classified, and the schools graded, and to teach in such schools as may be temporarily without teachers, and, by such directions, suggestions and illustrations, to the other teachers, to establish and maintain a uniform mode of teaching in the said schools."

Among the powers and duties of the directors, prescribed by statute, are, the supplying the school houses with proper conveniences and fuel; the exercise of general supervision of the schools, visiting them at least once every month, and causing the result of the visit to be entered on the minutes of the board; and to establish schools of different grades and determine into which school each pupil shall be admitted. And it is the duty of the county superintendent to visit, as often as practicable, the several schools, " to give such directions in the art of teaching and the method thereof, in each school, as to him, together with the directors and controllers, shall be deemed expedient and necessary; so that each school shall be equal to the grade for which it was established, and that there may be, as far as practicable, uniformity in the course of studies in the schools of the several grades respectively." Thus has the law provided for nearly all the duties that Noonan is employed to perform.

Prior to the contract with Noonan, the directors employed " a district superintendent," but in 1882 they changed the name to " principal of the schools," because they thought they were not justified in electing a superintendent, and were justified in

7 OUTERBRIDGE.—23

electing a principal with pretty much the same duties. No exception can be taken to the remark of the learned judge of the common pleas, namely, that in a matter of this kind we deal with things, not names; that a local superintendent or principal for a district may render valuable aid in making the school system efficient and progressive; and that no good could be expected if the place be filled by an incompetent favorite of the board, but if the official be a person of ability, fitness and character, great benefit may be derived.

However valuable such an office might be, if the statute does not authorize it a board of directors cannot create it. All agree "that the law does not give to any district the right, in distinct terms, of appointing superintendents, except in cities and boroughs of over five thousand inhabitants." But the appellees claim that under the large discretion entrusted to the directors they may appoint such officials to act under the county superintendent and directors, and that such appointments have been uniformly recognized by the school department of the Commonwealth. The authority for this claim is section 334 of the School Laws and Decisions. Power is not vested in the superintendent of public instruction to appoint officers not provided for by law, or to legalize their appointment by others, and he has not attempted such usurpation. Section 335 of the Decisions show that no person, not a director, has been recognized as capable of performing the duty of district superintendent. It is said that it is often impracticable for directors to perform the duty of visitation according to law; that the law wisely provides that they may perform it by one of their number; that they have power to pay the secretary for " other acts and duties" pertaining to his office; and that " all that is necessary, therefore, in districts advanced enough for this most efficient agency, is to assign the required duties to the secretary, with a reasonable compensation for the service, and the district superintendency is at once in legal existence and operation." This section is referred to, not for unqualified approval, but as evidencing the absence of recognition of the appointment by directors of a person, not one of their number, to act as a district superintendent. The law names certain things to be done by the secretary, and adds that he shall " do and perform all other acts and duties pertaining to the office of secretary of the board, and for his services shall receive such compensation as the board may direct." It also declares that the directors " shall, by one or more of their number, visit every school in the district at least once a month." When the secretary is assigned to perform that duty he visits as a director, and to pay him for such service out of the school fund is as illegal as it would be to pay any other director for like service, when he is directed

by the board to do it for them. He shall be paid for services pertaining to his office of secretary; not for performance of duties common to all the directors. The twisted view of the statute which seemed to give legal existence to a district superintendency, when filled by the secretary, with right to compensation for the service, has borne natural fruit in the appointment of Mr. Noonan, not a director, and voting him a salary for his services.

Doubtless the directors believed it for the interest of the district to employ Noonan to perform many of their own duties, and some of the duties of the county superintendent, in relation to the fifteen schools widely scattered over a large township. The grading of these schools is necessarily limited; only one admits of three grades. All are supplied with teachers, and Noonan is not to teach, except when a school is temporarily without a teacher. The directors honestly arranged to supervise, grade and visit the schools by proxy. But their good faith does not stand as authority for employing a superintendent for the district. The provisions of the law may be inadequate to the needs of the district because the county superintendent has too much to do, and the directors are indisposed to do all that is required of them. If so, the power that made the law alone can remedy its defects. Since the beginning of the system of common schools, from time to time, changes have been made to promote its advancement to a high standard. The end of its improvement has not been reached, and proposed supplementary changes and provisions will be enacted whenever the legislature shall be convinced of their utility.

In towns and densely populated districts graded schools are, or ought to be, established and a principal employed for each series. The duties of the principal teacher, though more extensive, are as easily comprehended as the duties of the principal in a school in the district of Mahanoy township, where an assistant is employed. If the town be so large as to embrace more than one series of graded schools, each principal has charge of his own. No provision has been made for the appointment of a district superintendent in townships, or in boroughs or cities having less than five thousand inhabitants. That office is unlike a principal teacher, for it extends over all the schools of the district, whether its territory be large and sparsely settled, or small and densely populated. The power to establish graded schools includes the power to employ principal and assistant teachers. Expressly granting the right to the school directors in cities and boroughs having over five thousand inhabitants to elect superintendents, forbids inference that the directors in other districts have such right. Noonan's employ-

[Delano Land Co.'s Appeal.]

ment is much like that referred to in sections 334, 335 and 336 of decisions of the state superintendent, materially differing from a city or borough superintendent, and is unauthorized by statute. It does not follow that his employment was lawful, from the fact that his duties are not the same in all respects as those of a city or borough superintendent.

This cause having been argued by counsel, upon consideration, the decree is reversed, and now it is adjudged and decreed :

1. That the contract between the school district of Mahanoy township and John C. Noonan, as admitted in the answer, was made by the directors of said district without authority of law, and is void.

2. That the directors of the said district, defendants, and their successors in office, be and are enjoined from issuing or causing to be issued, any order for payment of salary to said John C. Noonan for his services in pursuance of, or under, said contract ; and that the treasurer of the said district defendant and his successor in office, be and is enjoined from paying any such order that may hereafter be presented.

3. That the decree of the court below, except as set forth in the hereinbefore first and second paragraphs, shall stand and remain in force.

4. That the appellees pay the costs.

5. The record is remitted for enforcement of this decree.

The opinion of the court in Conners' et al. Appeal was delivered May 7th 1883.